# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

v.                                                    Criminal Case No: 1:14-cr-11-2

**WILLIAM MURPHY,**
        **Defendant.**

## OPINION/ REPORT AND RECOMMENDATION CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, William Murphy, in person and by counsel, Brian J. Kornbrath, appeared before me on March 13, 2014. The Government appeared by Shawn Morgan, Assistant United States Attorney. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Nine of the Indictment.

The Court proceeded with the Rule 11 proceeding by placing Defendant under oath.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court then inquired of Defendant whether he was a citizen of the United States. Defendant responded that he is a citizen. The undersigned asked Defendant whether he understood that if he were not a citizen of the United States, by pleading guilty to a felony charge he would be subject to deportation at the conclusion of any sentence; that he would be denied future entry into the United States; and that

he would be denied citizenship if he ever applied for it. Defendant stated that he understood.

The Court thereafter inquired Defendant as to his understanding of his right to have an Article III Judge hear his plea and his willingness to waive that right, and instead have a Magistrate Judge hear his plea. Thereupon, the Court inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear his plea and voluntarily consented to the undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before the United States Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, William Murphy, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent filed.

The undersigned then reviewed with Defendant Count Nine of the Indictment and the elements the government would have to prove, charging him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(I) and 924(c)(1)(B)(I). Under 18 U.S.C. § 924(c)(1)(B)(I), any individual who possessed a short-barreled rifle, short-barreled shotgun, or semi-automatic assault weapon during a violation pursuant to 18 U.S.C. § 924(c)(1)(A)(I) shall be subject to

a mandatory minimum sentence of ten (10) years. Under Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013), "any fact that increases the mandatory minimum is an 'element'" of the crime. The parties noted that Count Nine of the Indictment did not charge Defendant with possession of a short-barreled shotgun in furtherance of a drug offense. The undersigned reviewed with Defendant his right to have the fact that he possessed a short-barred shotgun found by a Grand Jury and charged in Count Nine of the Indictment. Defendant understood that right and admitted that he had possessed a short-barreled shotgun in furtherance of drug trafficking and that possession of a short-barreled shotgun in furtherance of a drug trafficking crime would increase his sentence. Upon inquiry, Defendant knowingly and intelligently waived his right to have the fact that the firearm in question was a short-barreled shotgun alleged in Count Nine of the Indictment.

      The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Nine of the Indictment and paragraph one (1) of his written plea agreement, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not less than ten (10) years and not more than life; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of five (5) years supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. He also understood that his sentence could be increased if he had a prior firearm offense, violent felony

3

conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant also understood that the parties had reached an agreement regarding an appropriate sentence for the offense charged in Count Nine, that being imprisonment for a period of 120 months, to be followed by five (5) years of supervised release. Defendant further understood that any monetary penalties, fees and/or restitution would be determined by the District Court.

The Court inquired of Defendant and determined Defendant also understood that, while the Court may accept, reject or defer its decision, this agreed disposition binds the Court, with respect to the expressly-stated term of imprisonment and supervised release, if and only if the Court accepts the plea agreement; that the District Judge would advise him whether she accepted his plea agreement; and if she did not follow or refused to accept the sentencing provisions set forth in the agreement, he would have the right to withdraw his guilty plea. If Defendant had the right under the above provision to withdraw his guilty plea, and did not do so, the District Judge could then sentence him to any sentence within the statutory maximum earlier addressed. Upon inquiry, Defendant further understood that the District Judge would utilize the advisory Sentencing Guidelines to assist her in deciding whether to accept or reject his plea agreement and the binding sentence contained therein. The undersigned also advised, and Defendant started that he understood, that the Sentencing Guidelines are no longer mandatory. Defendant further stated his attorney showed him how the advisory Guidelines chart worked.

The undersigned also reviewed with Defendant his waiver of appellate rights as follows:

Ct. Did you and Mr. Kornbrath discuss those rights of appeal that I just mentioned?

Def. Yes, sir.

Ct. Did you understand that under 18 U.S.C. § 3742 you have a right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals provided that you give notice of intent to appeal within 14 days of sentencing?

Def. Yes, sir.

Ct. Did you also understand from your discussion with Mr. Kornbrath that under 28 U.S.C. § 2255, commonly called a habeas corpus statute, you may file a motion collaterally attacking or challenging the sentence and how it's being carried out?

Def. Yes, sir.

Ct. Under your written plea agreement that you entered into, do you understand that if the District Judge imposes the binding sentence of 10 years–120 months–but not more than that, you give up your right to appeal that sentence to the Fourth Circuit Court of Appeals and you give up your right to collaterally attack or challenge that sentence by filing a writ of habeas corpus motion?

Def. Yes, sir.

Ct. And you understood that provision clearly when you signed the plea agreement, is that correct?

Def. Yes, sir.

Ct. Has anything changed about your understanding of that provision and the present?

Def. No, sir.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and

voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government or other persons, including his own attorney, other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Nine of the Indictment, the undersigned Magistrate Judge would write the subject Report and Recommendation and would order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after she had an opportunity to review the pre-sentence investigation report, would the District Judge adjudicate the Defendant guilty of the offense contained in Count Nine of the Indictment and make a determination as to whether to accept or reject any recommendation or the stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant

and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant also admitted the forfeiture allegation and understands and agrees to the administrative forfeiture of any property encompassed in the Indictment's Forfeiture Allegation. He waives the right to notice regarding the forfeiture and agrees that neither he nor anyone acting for him shall appear in or pursue any action to contest the forfeiture.

Thereupon, Defendant, William Murphy, with the consent of his counsel, Brian J. Kornbrath, proceeded to enter a plea of **GUILTY** to Count Nine of the Indictment.

Usually, the Court would hear the testimony of a Government witness to provide an independent basis in fact for Defendant's plea. However, the parties stipulated that the Government would provide a proffer to support such an independent basis in fact. The Government proffered that between November 26 and December 6, 2013, the Greater Harrison County Drug Task Force made a series of controlled purchases of oxycodone at a residence located at 90 Blane Street in Clarksburg, West Virginia, which is located within the Northern District of West Virginia. Subsequently, Detective Robert Root obtained a federal search warrant, which was executed at the 90 Blane Street residence on December 19, 2013. Prior to conducting a forced entry, officers observed Defendant near the front door of the residence. However, he was secured in the rear bedroom of the residence. Officers seized 150 30 mg oxycodone pills from a plastic bag that was found in a pipe at the base of the toilet. Officers had to remove the toilet from the base to retrieve that plastic bag. Officers also recovered United States currency, some of which was buy money, from a cabinet under the bathroom sink. $3,122.00 in United States currency was found in co-defendant Dye's pants pockets. Officers also recovered a handwritten "owe sheet" showing amounts that Defendant owed to Dye and Ledbetter. Another handwritten "owe sheet" showed amounts owed by

Defendant and co-defendant Farnsworth for oxycodone use. Paperwork seized from co-defendant Daniels showed that Dye, Ledbetter, and Daniels were the occupants of a vehicle that had been stopped by police in Ohio and from which United States currency had been seized a week before the search warrant was executed. This paperwork indicated that Dye, Daniels, and Ledbetter were residents of Michigan and were traveling in a rental vehicle that had been observed at the 90 Blane Street residence. The officers' investigation revealed that Dye and Ledbetter distributed oxycodone to Defendant and Farnsworth for redistribution to individuals in the Clarksburg area. When individuals came to the residence to purchase oxycodone, Dye, Daniels, and Ledbetter would remain in a room behind a blanket to attempt to conceal their identities.

During the search, officers also seized two firearms. One, a pistol, was seized from the floor of the living room. The living room was used by Dye, Daniels, and Ledbetter for sleeping when they stayed at the 90 Blane Street residence. The other, a Winchester shotgun, model 370 youth, 20 gauge, serial number C275043, was seized from a filing cabinet located in the dining room. The dining room is where distribution of oxycodone took place. Statements made by Defendant and others indicated that Defendant possessed that shotgun for purposes of protecting himself and his co-defendants during drug deals. An ATF agent confirmed that the Winchester shotgun meets the statutory definition of a short-barreled shotgun set forth in 18 U.S.C. § 921(a)(6), as the barrel was less than sixteen (16) inches in length and because the shotgun had an overall length of less than twenty-six (26) inches.

Defendant stated he heard, understood, and did not disagree with the Government's proffer. The undersigned United States Magistrate Judge concludes the offense charged in Count Nine of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by the Government's proffer.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his

right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count Nine of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed; Defendant made a knowing and voluntary plea of guilty to Count Nine of the Indictment; and Defendant's plea is independently supported by the Government's proffer, which provide, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to Count Nine of the Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is remanded to the custody of the United States Marshal pending further proceedings in this matter.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel

of record.

       Respectfully submitted this 14th day of March, 2014.

                                  *John S. Kaull*
                                  JOHN S. KAULL
                                  UNITED STATES MAGISTRATE JUDGE